STATE OF CONNECTICUT *v.* ANDRE HUCKABEE
(13930)

O'Connell, Lavery and Schaller, Js.

Argued January 23—officially released June 4, 1996

*Mary Miller Haselkamp*, assistant public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom were *Michael Dearington,* state's attorney, and, on the brief, *Cecelia Wiederhold,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-55, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant claims that the trial court (1) failed to instruct the jury on the lesser included offenses of assault in the second degree and assault in the third degree, (2) failed to instruct the jury on the limited use of prejudicial evidence, and (3) improperly limited the defendant's cross-examination of a police witness. We reverse the trial court's judgment in part and affirm it in part.

The jury could reasonably have found the following facts. On the night of November 22, 1992, Raymond Harris, Tyron Walton and Dontel Glover went to a New Haven nightclub. The three men walked toward a crowd that had gathered in front of the club. Soon after, Harris saw gunfire discharged from multiple sources. Walton was killed in the shooting, and a bullet struck Harris' leg. Harris was admitted to a hospital and released the next day.

Joseph Greene, a New Haven police detective, was assigned to investigate the shooting. Greene received an anonymous tip inculpating the defendant and three others in the shooting. Later that day, Greene recognized the defendant and arrested him. At the time, the defendant was on escape status from the Long Lane School.[1] At the police station, the defendant signed a

---

[1] The Long Lane School is a juvenile facility maintained by the department of children and families pursuant to General Statutes § 17a-3.

waiver of rights form and gave a statement implicating himself in the shooting.

I

The defendant first claims that the trial court improperly refused to instruct the jury on the lesser included offenses of assault in the second degree[2] and assault in the third[3] degree. We agree.

A defendant is entitled to a lesser offense instruction only if he can demonstrate compliance with the following four conditions: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, that justifies conviction of the lesser offense, and (4) the proof of the element or elements that differentiate the lesser offense from the greater offense is *sufficiently in dispute* to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser. *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra [179 Conn. 588], we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . [T]he jury's role as fact-

[2] At the time of the offense, General Statutes (Rev. to 1991) § 53a-60 (a) provided in pertinent part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-61 (a) provides in pertinent part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray*, 228 Conn. 147, 154, 635 A.2d 777 (1993). If we cannot exclude, as a matter of law, the possibility that the defendant is guilty only of the lesser offense, we must conclude that the trial court's failure to give the requested instruction is improper. Id., 155; *State* v. *Falby*, 187 Conn. 6, 30, 444 A.2d 213 (1982).

Because the state and the defendant agree that the first three prongs of *Whistnant* are satisfied,[4] we focus on the last prong. *Whistnant*'s fourth prong requires that the proof of the element or elements that differentiate the lesser offense from the greater be *sufficiently in dispute* to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser. Proof is sufficiently in dispute when "it is of such a factual quality that [it] would permit the finder of fact reasonably to find the defendant guilty on

---

[4] The defendant complied with the first prong of *Whistnant* by requesting instructions on assault in both the second and third degrees in accordance with Practice Book § 852. The trial court, finding that the injury was not sufficiently in dispute, refused to give those instructions. The defendant has similarly satisfied the second prong of *Whistnant*. The state agrees that the only element that distinguishes assault in the first degree as charged from assault in the second and third degrees is the seriousness of the injury. It is therefore not possible for this defendant to have committed the greater offense, in the manner described in the information, without having first committed the lesser as required by *Whistnant*. In order to satisfy the third prong of *Whistnant*, there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense. *State* v. *Rasmussen*, 225 Conn. 55, 67–68, 621 A.2d 728 (1993). The state maintains that it has proved serious physical injury and therefore necessarily proved physical injury. Thus it agrees that the jury reasonably could have found that the defendant caused physical injury to Harris.

the lesser included offense." (Internal quotation marks omitted.) *State* v. *Fernandez*, 5 Conn. App. 40, 48, 496 A.2d 533 (1985).

To obtain a conviction on assault in the second or third degree in this case, the state was required to prove that Harris sustained physical injury, defined as the impairment of physical condition or pain. General Statutes § 53a-3 (3). In order to convict the defendant of assault in the first degree, the state was required to prove serious physical injury, defined, in relevant part, as physical injury that causes serious disfigurement, serious impairment of health, or serious loss or impairment of the function of any bodily organ.[5] General Statutes § 53a-3 (4).

In the present case, the state offered the testimony of two witnesses to prove that Harris had sustained serious physical injury as a result of the shooting. Gerard Burns, a surgeon, testified that the bullet passed through Harris' leg, but bypassed both the bones and the blood vessels. Burns also explained that the wound left permanent scars on Harris' leg. Burns then testified extensively that the possible risks associated with a bullet wound to the leg included a fractured pelvis, damage to the blood vessels, and damage to the femoral and sciatic nerves. Harris testified that he has small scars marking the entry and exit of the bullet.

On cross-examination, Burns conceded that at no time did the defendant experience any of the potential

---

[5] Although serious physical injury also includes a "substantial risk of death"; General Statutes § 53a-3 (4); the trial court refused to charge on this portion of the definition because the state failed to present any evidence in support of the victim's substantial risk of death. The state contends that the defendant is challenging the finding of serious physical injury on the basis of Harris' recovered use of his leg, and not the amount of injury suffered at the time of the shooting. The state correctly explains that a victim need not suffer permanent injury in order to have sustained serious physical injury. *State* v. *Dickson*, 10 Conn. App. 462, 465, 523 A.2d 935 (1987). We have applied this law in our analysis of the defendant's claims.

risks that Burns described in his direct testimony. Burns could not testify on the appearance of the wound because he could not remember what the wound looked like and no pictures had been taken. Burns could not comment on the present state of the injury because Harris had refused to continue treatment. Harris revealed that although he experienced a tingling sensation that was sometimes accompanied by pain in his leg, the injury has never inhibited his daily activities. Harris also testified that he stopped therapy after three sessions.

Through cross-examination of Burns and Harris, the defendant put the element of serious physical injury in dispute. On the basis of on this evidence, the jury reasonably could have found that the victim was not seriously disfigured, his health was not seriously impaired, and he suffered no serious loss or impairment of the function of any bodily organ at the time of the shooting.

The state contends that because the defendant was unable to discredit the state's witnesses, the degree of injury was not sufficiently in dispute and the jury was precluded from finding that the defendant caused only physical injury. Through cross-examination, the defendant clearly challenged the physical nature of the bullet wound. The jury is responsible for determining the credibility of the witnesses and we will not retry the facts of the case. *Drabik* v. *East Lyme*, 234 Conn. 390, 394–95, 662 A.2d 118 (1995).

The state next argues that the degree of injury was not sufficiently in dispute because both parties agreed that Harris was shot in the leg. This contention evinces a misunderstanding of the fourth prong of *Whistnant*. Although the parties agreed that Harris suffered a bullet wound, they could not agree that the wound constituted serious physical injury. A bullet wound is not per se

serious physical injury. Such a determination is a question of fact for the jury. *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989); *State* v. *Hooks*, 30 Conn. App. 232, 240, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993); *State* v. *Rumore*, 28 Conn. App. 402, 414, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992); *State* v. *Graham*, 21 Conn. App. 688, 717, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990).

The state also contends that the seriousness of the injury was undisputed because the defendant failed to present his own evidence on the degree of injury. This argument is contrary to the law. A defendant can place a particular element of the crime charged sufficiently in dispute through the cross-examination of a state's witness, the major function of which is to put certain matters in dispute. *State* v. *Smith*, 35 Conn. App. 51, 62, 644 A.2d 923 (1994). The defendant is not required to call his own witnesses to satisfy the fourth prong of *Whistnant*. By cross-examining both Harris and Burns on the amount and nature of pain and disfigurement suffered by Harris and the amount of therapy needed to treat the injury adequately, the defendant put the degree of injury sufficiently in dispute to warrant instructions on assault in the second and third degrees.

The state next contends that the defendant did not put the seriousness of the injury sufficiently in dispute because he presented an alibi defense at trial. The degree of Harris' injury, however, is an issue wholly separate from the defendant's alibi defense. A defendant may argue that he did not cause the injury and challenge the degree of injury sustained by the victim. In short, the defendant was not precluded from denying that he caused Harris' injury while also contesting that the bullet, fired from another's gun, did not cause serious physical injury to Harris.

The state finally argues that the defendant benefited from the trial court's refusal to give the requested instructions because if the jury believed that Harris sustained only physical injury, it would have acquitted the defendant of assault in the first degree. This argument is contrary to Connecticut law. If a defendant is entitled to a lesser included offense instruction, a refusal to so charge is not harmless merely because the defendant was convicted of a greater offense. *State* v. *Bagley*, 35 Conn. App. 138, 150, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).

The defendant has satisfied the fourth prong of *Whistnant* because we cannot exclude the possibility that the defendant is guilty of one of the lesser offenses. We conclude that the trial court improperly failed to give the requested instruction. Accordingly, the conviction on the charge of assault in the first degree is reversed and a new trial is ordered on that charge.

## II

The defendant next claims that he was entitled to a jury instruction on the limited use of numerous pieces of prejudicial evidence. Generally, evidence of prior uncharged crimes or misconduct is inadmissible because of the prejudicial nature of that evidence. *State* v. *Busque*, 31 Conn. App. 120, 129, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994) (certification improvidently granted). In the event that such evidence is admitted, a trial court customarily, sua sponte if necessary, instructs the jury as to the limited purpose for which such evidence is to be considered, thereby vitiating the potential prejudice. See *State* v. *Cooper*, 227 Conn. 417, 428, 630 A.2d 1043 (1993); *State* v. *Joyner*, 225 Conn. 450, 474, 625 A.2d 791 (1993); *State* v. *Baldwin*, 224 Conn. 347, 357–58, 618 A.2d 513 (1993); *State* v. *Ryan*, 182 Conn. 335, 338 n.5, 438 A.2d 107 (1980); *State* v. *Ulen*, 31 Conn. App. 20, 35–36, 623

A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993); *State* v. *Servello*, 14 Conn. App. 88, 94–95, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988).

A

In its case-in-chief, the state introduced evidence that Greene knew the defendant by his street name, "Snake." We agree with the trial court that this name in itself has insufficient negative connotations to warrant a limiting instruction. After introducing the defendant's street name for the legitimate purpose of establishing his identity, however, the state continued to question Greene on how he knew the defendant was known as Snake. Greene responded that he had acquired the defendant's true name by running the street name through the records of the New Haven police department.

The state contends that the introduction of the defendant's street name and how Greene knew of this name does not constitute evidence of prior misconduct. We do not agree. While the street name in itself is not evidence of prior misconduct, evidence that the defendant's name was found in police department records suggests that he either had a criminal record or had been the subject of police interest. The defendant was therefore entitled to a limiting instruction on the use of this evidence so that the jury would use it properly in its deliberations.

The state next introduced evidence that the defendant was employed as a drug seller. Although in a written statement the defendant admitted selling drugs, the trial court redacted this admission from the statement pursuant to a ruling on a motion in limine.[6] The state contends

---

[6] We note that the introduction of this evidence also violates the spirit, if not the letter, of the motion in limine. Because the defendant did not raise a claim of the state's violation of the ruling on the motion in limine, however, we limit our discussion to the introduction of this evidence as evidence of the defendant's prior misconduct.

that the introduction of the defendant's occupation as a drug seller is not evidence of prior misconduct. To support that contention, the state argues that because portions of the defendant's written statement were redacted, the presentation of this same evidence through a state's witness does not constitute misconduct evidence. This argument has no merit. Despite the redaction in the defendant's written statement, the presentation of this evidence through a state's witness unquestionably constituted evidence of the defendant's prior misconduct. Accordingly, the defendant was entitled to have the jury instructed on its limited use.

In cross-examination of Greene, the defendant introduced evidence to support his alibi defense that he had escaped from the Long Lane School shortly before the incident here. Thereafter, the state elicited from one of its witnesses that the defendant had escaped from Long Lane on numerous other occasions. The state contends that because the defendant *first* presented evidence of his own misconduct to bolster his alibi defense, he is precluded from having the jury instructed as to the limited use of the other escape attempts that it introduced. We agree with the state that it was entitled to explore the defendant's multiple escapes from Long Lane once the defendant opened the door to such inquiry. The introduction of the defendant's escapes prior to this prosecution, however, should have been accompanied by a limiting instruction that the evidence was to be used solely for the purpose of evaluating the defendant's veracity, and not his propensity to commit the crime charged. We conclude that the nature of this evidence, regardless of who introduced it, requires a limiting instruction.

B

Having concluded that the trial court's failure to give limiting instructions was improper, we must next deter-

mine if it was harmful. The failure to give a requested instruction on prior misconduct evidence is not of constitutional dimension. *State* v. *Servello*, supra, 14 Conn. App. 94–95. Therefore, in order to prevail on his evidentiary claim, the defendant must prove that it was reasonably probable that the jury was misled by the failure to give a limiting instruction. *State* v. *Fleming*, 198 Conn. 255, 269, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Manson*, 186 Conn. 574, 585–86, 442 A.2d 1335 (1982). The defendant has met this burden.

The defendant's confession was pivotal to this case. At trial, the defendant disavowed his confession and raised an alibi defense. Both the state and the defendant point out that the critical issue for the jury was therefore whether it believed the confession. No other witness placed the defendant at the scene, and the defendant's credibility was crucial not only to the weight to be accorded to the confession, but also to the validity of his alibi defense. Although the jury could use the evidence of prior misconduct to assess the defendant's credibility, because the court failed to provide the jury with any guidance on how to use that evidence, it is likely that it also used it for substantive purposes.

The evidence that the police department had a record of the defendant, that the defendant was a drug seller, and that the defendant had escaped from Long Lane on several occasions more probably than not served as a basis for the jury's conviction. Accordingly, we conclude that the defendant is entitled to a new trial.

III

We do not reach the issue of whether the trial court improperly restricted the defendant's cross-examination of Greene because the issue is not likely to arise again on retrial.

The judgment is reversed only as to the convictions of manslaughter in the first degree and assault in the first degree and the case is remanded for a new trial on those charges.

In this opinion LAVERY, J., concurred.

SCHALLER, J., dissenting. The majority reverses the defendant's manslaughter and assault convictions and remands this case for a new trial on the basis of its conclusions that the trial court improperly failed to instruct the jury on lesser included offenses and the claimed limited use of certain evidence. Because I conclude that the trial court properly refused to instruct on assault in the second and third degrees as lesser included offenses and did not abuse its discretion by declining to give a limiting instruction on the evidence, I respectfully dissent.

I

My disagreement on the first issue concerns the application of the fourth condition of *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), to this case. I conclude that the evidence concerning serious physical injury was not sufficiently in dispute to warrant instructions on the charges of assault in the second and third degrees and, therefore, the trial court properly refused to instruct on those charges. Only the victim of the alleged assault, Raymond Harris, and the state's witness, Gerard Burns, a surgeon, testified concerning the injury. Harris testified that he had two scars from the entry and exit wounds caused by the bullet, and that he suffered tingling and pain in his leg and ankle as a result of the shooting. Burns also testified that the bullet that struck Harris produced entry and exit wounds, both of which left permanent scars.

On numerous occasions, this court has recognized that bullet wounds cause serious physical injury. *State*

v. *Hooks*, 30 Conn. App. 232, 240, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993) (victim shot in finger); *State* v. *Dickerson*, 28 Conn. App. 290, 292, 612 A.2d 769 (1992) (victim shot in left foot); *State* v. *Estrada*, 26 Conn. App. 641, 655, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992) (victim shot once in each leg); *State* v. *Graham*, 21 Conn. App. 668, 716, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990) (victim shot in face and shoulder); *State* v. *Woodard*, 11 Conn. App. 499, 501, 528 A.2d 404, cert. denied, 205 Conn. 802, 531 A.2d 940 (1987) (victim shot in upper left arm and shoulder); *State* v. *Dickson*, 10 Conn. App. 462, 465, 523 A.2d 935 (1987) (victim shot twice in left thigh).

The defendant attempted to challenge this evidence in the course of cross-examination. The defendant elicited testimony from Harris that he has not allowed the injury to impede his daily activities. Burns testified on cross-examination that he could not comment on the present state of the injury and could not remember what the wound looked like at the time he treated it one and one-half years earlier. On the basis of these minimal concessions, the majority concludes that the defendant "clearly challenged the physical nature of the bullet wound," and created a sufficient dispute about the seriousness of it to require the trial court to give the lesser included offense instructions.

The majority further states that "we cannot exclude the possibility that the defendant is guilty of one of the lesser offenses." This court has concluded otherwise on two separate occasions in cases involving assault in the first degree convictions, and I would so conclude in this case. In *State* v. *Smith*, 35 Conn. App. 51, 62, 644 A.2d 923 (1994), the defendant claimed that the evidence of the permanency of a scar was sufficiently in dispute "because the victim did not seem overly bothered by the scar and did not immediately seek

corrective surgery."[1] The victim's plastic surgeon had testified that the victim wanted to wait and see if the scar would improve by itself. Id. We rejected the defendant's claim, holding: "The victim's attitude about the scar and the need for corrective surgery are completely irrelevant to the question of permanency. We are not persuaded by the defendant's claim that the proof of permanency of the victim's scar was sufficiently in dispute to require an instruction on the claimed lesser included offense." Id., 62–63.

Likewise, in *State* v. *Graham*, supra, 21 Conn. App. 716, we rejected the defendant's claim that the trial court improperly denied him the opportunity to voir dire an ophthalmologist who testified as an expert witness as to the injuries sustained by the victim. The defendant claimed that with the ophthalmologist's testimony concerning whether he had specific medical experience with the injury involved, whether he had been suspended from practice and whether he had any interest in the case, the jury would not have concluded that the injury was serious enough to warrant a conviction for first degree assault. We concluded: "There was evidence before the jury that [the victim] was shot in the face and shoulder and can no longer see out of his left eye. In light of the evidence presented, we cannot say, as a matter of law, that the questions proposed by the defendant on appeal could have led the jury to believe that [the victim's] injuries were not serious." Id., 717.

" 'Serious physical injury' means physical injury which . . . causes serious disfigurement, serious

---

[1] The defendant in *State* v. *Smith*, supra, 35 Conn. App. 52, was convicted pursuant to General Statutes § 53a-59 (a), which provides in pertinent part: "A person is guilty of assault in the first degree when . . . (2) with intent to disfigure another person *seriously and permanently* . . . he causes such injury to such person or to a third person . . . ." (Emphasis added.) The defendant requested the trial court to instruct the jury on the charge of assault in the third degree pursuant to General Statutes § 53a-61 (a) (2), which does not require that the serious injury be permanent. Id., 59.

impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). Although I recognize "the difficulty of drawing a precise line as to where 'physical injury' leaves off and 'serious physical injury' begins"; *State* v. *Miller*, 202 Conn. 463, 489, 522 A.2d 249 (1987); I cannot agree with the majority that a jury could consistently find the defendant not guilty of assault in the first degree but guilty of assault in the second or third degree in light of the evidence that the victim was shot and has two permanent scars, one from an entry wound and one from an exit wound.

"Evidence is sufficiently in dispute where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal.[2] *State* v. *Manley*,

---

[2] I find no merit in the majority's argument that because the parties "could not agree that the wound constituted serious physical injury" that lesser included offense instructions were warranted. Moreover, I note that the majority relies on precedent dealing with insufficiency of the evidence claims to posit that whether this bullet wound was serious physical injury is a question of fact for the jury. Those cases, and that conclusion, are not inconsistent with my position. Insufficiency of the evidence claims concern whether the state has proven the elements of a crime beyond a reasonable doubt. This is not, however, an insufficiency of the evidence claim. The *Whistnant* test concerns a defendant's claim that he is entitled to an instruction on a lesser included offense "if upon the evidence he can properly be found guilty of it and the allegations of the information include the elements which constitute that lesser offense." *State* v. *Whistnant*, supra, 179 Conn. 579. Our Supreme Court's holding in *Whistnant* demonstrates that a defendant is not entitled to an instruction on all lesser included offenses. Id., 587 (holding that defendant not entitled to instruction on lesser included offense of larceny in fourth degree when charged with robbery in first degree under facts of case). No doubt, however, the state still had to prove every element of the crime charged in *Whistnant* beyond a reasonable doubt, and each element remained a question of fact for the jury. Likewise, in this case, the defendant is not entitled to instructions on second and third degree assault and the element of serious physical injury remains a question of fact for the jury that the state must prove beyond a reasonable doubt.

195 Conn. 567, 579, 489 A.2d 1024 (1985), quoting *State*
v. *Whistnant,* supra [179 Conn. 588]. Nonetheless, jurors
are supposed to reach their conclusions on the basis of
common sense, common understanding and fair beliefs,
grounded on evidence . . . from which inferences can
fairly be drawn. *State* v. *Manley,* supra [579], quoting
*Schultz* v. *Pennsylvania R. Co.*, 350 U.S. 523, 526, 76
S. Ct. 608, 100 L. Ed. 668 (1956). They should not be
encouraged to engage in speculation. *State* v. *Manley,*
supra, 580." (Internal quotation marks omitted.) *State*
v. *Montanez,* 219 Conn. 16, 23, 592 A.2d 149 (1991).[3]

I conclude that, given the uncontested testimony con-
cerning the nature and effect of the victim's injury sus-
tained as a result of his having been shot by the
defendant, only sheer speculation could have resulted
in the jury's finding only physical injury.

## II

The defendant's second claim is based on an alleged
abuse of discretion by the trial court in refusing to give
a limiting instruction on what the defendant asserts
was misconduct evidence. The challenged evidence
consists of the following: (1) the defendant's street
name was "Snake," (2) the defendant sold drugs for
Frank Carr, and (3) the defendant had been committed
to and was on escape status from Long Lane School at
the time of the incident.

With regard to the first item, the state concedes that
it introduced evidence of the defendant's street name
during direct examination of Joseph Greene, a New

---

[3] See also *State* v. *Torrence,* 37 Conn. App. 482, 491, 657 A.2d 654 (1995)
(evidence not sufficiently in dispute to warrant instruction on lesser included
offense when defendant charged with robbery in first degree); *State* v. *Ray,*
30 Conn. App. 95, 102–103, 619 A.2d 469, rev'd on other grounds, 228 Conn.
147, 635 A.2d 777 (1993) (manslaughter in first degree); *State* v. *Arline,* 25
Conn. App. 653, 660, 596 A.2d 7 (1991), rev'd on other grounds, 223 Conn.
52, 612 A.2d 755 (1992) (first degree sexual assault).

Haven police detective. Greene testified that he had learned from an anonymous source that a person known as Snake was responsible for the shooting. He checked police department records and found that the defendant used that name and another alias. The purpose of the evidence was to establish how Greene was led to recognize and stop the defendant at the Chapel Square Mall in New Haven. The evidence was not offered as evidence of misconduct for the purpose of impeaching the credibility of the defendant or for showing a criminal propensity. I conclude, therefore, that Greene's testimony on this matter does not constitute misconduct evidence. *State* v. *Gant*, 231 Conn. 43, 58, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995) ("threatening complaint merely helped explain to the jury the events that led the police to the scene of the defendant's arrest").

The second item, drug sale activity, was contained in the defendant's statement. When his statement was admitted into evidence, the court ordered that information redacted. During direct examination of the defendant's aunt, the defendant's attorney raised the matter of the defendant's relationship with Carr, including the fact that the defendant worked for Carr. Subsequently, the defendant's aunt testified on cross-examination by the state that the defendant was selling drugs and collecting money for Carr.[4] The state, therefore, was merely pursuing a matter initially raised by the defense in its direct examination of the defense witness.

The third item, concerning the defendant's status with regard to Long Lane, was also initially introduced by the defendant during cross-examination of Greene. The defendant introduced evidence of one escape by the defendant from Long Lane in order to demonstrate

---

[4] The defendant objected to that testimony only as it concerned the time period involved.

that the defendant was arrested for escaping, not for murder. On redirect, the state then elicited additional testimony from Greene as to other escapes. The defendant failed to request the trial court to admit for only a limited purpose the evidence that he caused to be introduced, concerning both the defendant's relationship with Carr and his escapes from Long Lane.

Action induced by a party ordinarily cannot be grounds for error. *State* v. *Walton*, 227 Conn. 32, 67, 630 A.2d 990 (1993); *State* v. *Edwards*, 39 Conn. App. 242, 251, 665 A.2d 611, cert. denied, 235 Conn. 924, 666 A.2d 1186 (1995). The defendant cannot claim now that the trial court improperly abused its discretion by failing to give a limiting instruction after causing the evidence to be introduced. "A defendant can present a claim of relief from induced error 'only upon a showing that the error violated his constitutional rights.'" *State* v. *Edwards*, supra, 251–52, quoting *State* v. *Harrison*, 34 Conn. App. 473, 488, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994); see *State* v. *Youdin*, 38 Conn. App. 85, 98, 659 A.2d 728, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995).

The defendant cannot make this showing because: "'Robing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature. See *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988).' *State* v. *Ulen*, 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993)." *State* v. *Webb*, 37 Conn. App. 722, 730, 657 A.2d 711, cert. denied, 234 Conn. 915, 660 A.2d 357 (1995). "[T]he failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude." *State* v. *Ulen*, supra, 37.

The effect of the majority opinion would be that any evidence that suggests prior misconduct of a defendant,

regardless of the purpose for which it was offered, and even when that evidence was offered initially by the defendant, requires a limiting instruction by the trial court informing the jury that the evidence is to be considered "solely for the purpose of evaluating the defendant's veracity, and not his propensity to commit the crime charged."

Our law does not dictate that every item of prejudicial evidence is misconduct evidence subject to a limiting instruction. That is nevertheless essentially what the defendant seeks. I agree that misconduct evidence admitted to show, for example, an element of the crime, identity, malice, motive, or a system of criminal activity requires a limiting instruction. *State* v. *Ouellette*, 190 Conn. 84, 94–95, 459 A.2d 1005 (1983). In this case, however, the evidence of the defendant's street name was offered only to show how Greene was led to arrest the defendant. It is not, therefore, subject to a limiting instruction. See *State* v. *Gant*, supra, 231 Conn. 58–59.

With regard to the other challenged evidence, the defendant initially offered the evidence without indicating any limited purpose and, therefore, any possible error was induced by the defendant. Moreover, the defendant did not request that the evidence be introduced for a limited purpose until the end of his trial. A request for a limiting instruction after introducing the evidence is a belated attempt to raise a nonconstitutional issue, not properly preserved in the first instance.[5]

Accordingly, I would affirm the judgment of conviction.

For the foregoing reasons, I respectfully dissent.

---

[5] The defendant also claims that the trial court improperly limited his cross-examination of Greene. I find no merit in the defendant's claim. *State* v. *James L.*, 26 Conn. App. 81, 83, 598 A.2d 663 (1991).